UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Mark Anthony Hawkins,

                        Plaintiff,

      v.

Commissioner of Social Security,

                        Defendant.

**Decision and Order**

19-CV-178 HBS
(Consent)

---

## I.  INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 6, pages hereafter cited in brackets), and familiarity is presumed.  This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 11, 13.)  In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Disability Insurance Benefits under Title II of the Social Security Act.  The Court has deemed the motions submitted on papers under Rule 78(b).

## II.  DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry.  We must first decide whether HHS applied the correct legal principles in making the determination.  We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted).  When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

2

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

   (1) whether the plaintiff is currently working;

   (2) whether the plaintiff suffers from a severe impairment;

   (3) whether the impairment is listed in Appendix 1 of the relevant regulations;

   (4) whether the impairment prevents the plaintiff from continuing past relevant work; and

   (5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the Commissioner's final determination on the basis that it rests improperly on lay interpretations of medical evidence. The ALJ found that plaintiff had the severe impairments of chronic kidney disease, hypertension, and obesity. [16.] After finding that plaintiff met no medical listing, the ALJ determined that plaintiff had an RFC for medium work with no limitations. [16.] Plaintiff now argues that the ALJ could not have crafted this RFC without making his own interpretations of the clinical records available:

> The ALJ did not conduct a function-by-function analysis. In addition, Plaintiff's impairments were not minor in nature, as evidenced by the placement of a pacemaker, remarkable findings in the pacemaker readings ongoing uncontrolled blood pressure, ongoing dyspnea with exertion and walking, and numerous medication changes. (Tr. 224, 233, 235, 237, 239, 254, 261, 263, 268, 273, 289, 298, 300, 303, 305). Moreover, this evidence was too complex for the ALJ to interpret and translate into functional terms. *See Williams v. Berryhill*, 2017 WL 1370995, at *4 (W.D.N.Y. Apr. 17, 2017) (citing *Dale v. Colvin*, 2016 WL 4098431, at *4 (W.D.N.Y. Aug. 2, 2016)) ("The ALJ was not permitted to render a common sense judgment about Williams's functional capacity because these treatment records contain complex medical findings like MRI results, ultrasonic knee injection notes, and knee arthroscopy operative reports.").
>
> Furthermore, the record was devoid of any useful assessment of Plaintiff's limitations. The ALJ claimed that Dr. Redhead restricted Plaintiff to lifting 50 pounds. (Tr. 14, 17). However, this conclusion was based on his mischaracterization of Plaintiff's testimony about his activity restrictions. After testifying that he got shortness of breath and tried after any strenuous activity and walking for 5 minutes and would be "wiped out" and need to sit after 15 minutes of walking (tr. 28), Plaintiff was asked if any of his doctors advised him to restrict his lifting "or anything like that". (Tr. 29). He responded that they had, but he could not remember "exactly what, how many pounds I'm supposed to lift, but yeah, that was something that came up with Dr. Redhead; recommended that I not lift . . . anything too heavy." (Tr. 29-30). Then, he testified that the heaviest he could lift was "about, like, 50 pounds maybe" and stated his grandchildren were that weight. (Tr. 30). He could no longer shovel and had difficulty doing laundry. (Tr. 30). He later explained that he was "very limited" in his ability to run around with his grandchildren and mostly told stories and sat, talked, and got on the computer with them. (Tr. 31-32).

4

> This testimony clearly does not indicate that Dr. Redhead opined Plaintiff could lift up to 50 pounds, and it definitely does not indicate that he was lifting his 50-pound grandchildren for 2 hours in an 8-hour period, as required for medium work. *See* S.S.R. 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983) ("A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds."). His testimony also did not indicate Dr. Redhead restricted Plaintiff from any specific activities as incorrectly stated by the ALJ, and directly contradicts that finding that Plaintiff was capable of standing and walking for 6 hours in an 8-hour period without any limitations. (Tr. 17, 29-30). As such, it did not serve as substantial evidence Plaintiff could perform a full range of medium work.

(Dkt. No. 11-1 at 10–12; *see also* Dkt. No. 14 at 2.)

The Commissioner responds that plaintiff's medical records contained enough details about his functioning that neither medical source statements nor interpretations of the medical records were necessary:

> These treatment records show that between 2014 and 2017 Plaintiff saw his primary care provider, Dr. Redhead, for follow up on his chronic conditions including hypertension, diabetes, obesity, kidney disease, and his cardiac condition. Tr. 15, 209-16, 232-56, 266-74. Dr. Redhead's records reflect that Plaintiff routinely denied complaints of chest pain, racing heartrate, palpitations, lightheadedness, shortness of breath, dyspnea, fatigue, and wheezing related to his cardiac condition. Tr. 209, 213-14, 232, 236, 240, 245, 252, 266, 271. Dr. Redhead also reported that Plaintiff's diabetes was stable with no diabetic complications and that Plaintiff's hypertension was stable with no associated symptoms such as headaches, focal neurological deficits, or chest pain. Tr. 209, 213, 266. Even when Plaintiff's hypertension was poorly controlled, he reported no associated symptoms. Tr. 209, 232, 236, 240, 252, 271. Similarly, Dr. Redhead stated that Plaintiff denied symptoms of polyuria, nocturia, oliguria, edema, pruritus, malaise, weakness, anorexia, nausea, and vomiting related to his chronic kidney disease. Tr. 213, 232, 236, 252, 271. On physical examinations during this period, Dr. Redhead consistently found that Plaintiff was in no acute distress; his lungs were clear to auscultation; there were no signs of respiratory distress; his heart rate and rhythm were regular; his heart sounds were normal without murmurs; his extremities were normal with no edema or varicosities; musculoskeletal exams were normal4 with normal gait and station; and his sensation was intact. Tr. 210-11, 215, 234, 238, 242, 247-48, 254-55, 268, 273.

(Dkt. No. 13-1 at 6–7.)

5

The Commissioner has the better argument.  "If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence."  20 C.F.R. § 404.1520b(a).  "We will assess your residual functional capacity based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  As the Commissioner has cited, plaintiff visited a primary care clinic on July 29, 2014.  [216.]  A number of medical conditions were acknowledged, but plaintiff himself reported that his diabetes and hypertension were stable and that he exercised regularly.  [216.]  Several months later, on February 6, 2015, Plaintiff returned to the same clinic.  Plaintiff ran out of hypertension medication and was "doing poorly" with hypertension, but he remained stable with respect to diabetes.  [212.]  A physical examination uncovered a normal gait and no limitations in range of motion.  [214.]  Plaintiff also showed no signs of respiratory distress.  [214.]  During a return visit on September 24, 2015, plaintiff had aggravated hypertension and an atrial flutter, but an echocardiogram returned a normal ejection fraction of about 60%.  [225.]  Plaintiff also reported shoulder pain that improved by the next clinical visit on February 24, 2016.  [235.]  A physical examination was unremarkable.  [237.]  *Cf. Vanderhorst v. Berryhill*, No. 17CV10205 (WHP) (DF), 2019 WL 3416003, at *15 (S.D.N.Y. June 25, 2019( ("In this case, Plaintiff does not dispute that the medical record contains no objective finding that substantiates her claimed inability to lift more than 10 pounds, as no medical source assessed her as having limitations with respect to lifting, either in a formal Medical Source Statement or in treatment notes."), *report and recommendation adopted sub nom. Vanderhorst v. Saul*, No. 17CV10205, 2019 WL 3409795 (S.D.N.Y. July 29, 2019).  Additional physical examinations with unremarkable results occurred on September 8 and October 27, 2016; there, plaintiff's chronic conditions were acknowledged but with no notations that would suggest any changes.  [264, 271.]  These and other records that the Commissioner has cited

consistently documented a patient of plaintiff's age (62 in 2017) with some chronic conditions but no developments that required interpretation and no developments that required medical source statements. *Cf. Tankisi v. Comm'r*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) ("The medical record in this case is quite extensive.  Indeed, although it does not contain formal opinions on Tankisi's RFC from her treating physicians, it does include an assessment of Tankisi's limitations from a treating physician, Dr. Gerwig.  Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity.") (citations omitted). The record here required no interpretation at the level that caused concern in *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999).  *See id.* at 63 (ALJ decided on his own that plaintiff's "seizures were caused by a failure to take his medication" when no treatment provider said so).  Additionally, the record shows that plaintiff's hypertension was under control when he took medication and that doctors refilled his prescription when he ran out and his hypertension worsened.  *Cf. Perez v. Colvin*, No. 3:13CV868 HBF, 2014 WL 4852836, at *19 (D. Conn. Apr. 17, 2014) (Commissioner affirmed where, *inter alia*, obesity, diabetes, and hypertension were controlled with medication), *report and recommendation adopted*, No. 3:13-CV-868 JCH, 2014 WL 4852848 (D. Conn. Sept. 29, 2014).

To the extent that plaintiff has highlighted portions of the record that could be seen as supporting greater functional limitations, resolving factual discrepancies is where the substantial-evidence rule has maximum effect.  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks and citation omitted); *see also Edwards v. Barnhart*,

314 F.3d 964, 966 (8th Cir. 2003) ("We examine evidence both supporting and detracting from the decision, and we cannot reverse the decision merely because there exists substantial evidence supporting a different outcome.") (citation omitted); *Henderson v. Comm'r*, No. 18-CV-00072, 2019 WL 3237343, at *5 (W.D.N.Y. July 18, 2019) (affirming ALJ resolution of RFC where treating physician records supported exertional limits despite other evidence in the record). Under these circumstances, the Court is obligated to affirm the Commissioner's final determination regardless of how it might have viewed the evidence in the first instance.

### III.   CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 13) and denies plaintiff's cross-motion (Dkt. No. 11).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                                      __/s Hugh B. Scott_____
                                                                      Hon. Hugh B. Scott
                                                                      United States Magistrate Judge

DATED: June 9, 2020